UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JOHN WAYNE BROWN AND MYRNA
LYNN BROWN,

        Plaintiffs,

  v.

WELLS FARGO BANK, N.A.,

        Defendant.

6:12-cv-1663-AA

OPINION AND ORDER

AIKEN, Chief Judge:

    Plaintiffs filed this action alleging violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 et seq., as well as common claims of breach of contract, negligence, and negligent infliction of emotional distress. Plaintiffs seek declaratory relief, damages and attorney fees. Defendant moves to dismiss plaintiffs' claims for failure to state a claim on which

1   - OPINION AND ORDER

relief may be granted. Fed. R. Civ. P. 12(b)(6). The motion is granted, in part.

## STANDARD

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint is construed in favor of the plaintiff, and its well-pleaded factual allegations are taken as true. Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010). However, the court need not accept "conclusory" allegations, "unwarranted deductions of fact, or unreasonable inferences." Id. Instead, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## BACKGROUND

On January 21, 2010, plaintiffs filed for bankruptcy in the United States Bankruptcy Court for the District of Oregon. On July 30, 2010, the Bankruptcy Court issued a confirmation order and confirmed plaintiffs' Bankruptcy Plan (the Plan). Plaintiffs allege that defendant, as the servicer of plaintiffs' mortgage loan, was bound by the provisions of the Plan.

2    - OPINION AND ORDER

Under the Plan, plaintiffs were required to make six monthly payments of $2,275 and monthly payments of $1,900 afterward. Of that amount, $882.78 was to be paid toward plaintiff's mortgage loan, with $244.17 paid to monthly escrow. Plaintiffs maintain that they have made all payments as required by the Plan.

In February 2012, a representative of defendant contacted plaintiffs by telephone and informed them that no payments or interest on plaintiff's mortgage loan had been received since 2010. Plaintiffs were current with payments under the Plan and believed that defendant's loan account information was in error.

On March 13, 2012, plaintiffs, "by and through" their counsel, sent defendant a Qualified Written Request (QWR) regarding their mortgage loan account. Plaintiffs' QWR notified defendant that plaintiffs believed the servicing of the loan account was in error and requested that defendant acknowledge receipt of plaintiffs' QWR within twenty days and correct the alleged errors on the loan account within sixty days.

On March 18, 2012, defendant received plaintiffs' QWR, as reflected by certified mail receipts. Defendant did not acknowledge receipt of the QWR within twenty days and did not take action to correct the errors regarding plaintiffs' loan account or provide information requested by plaintiff within sixty days.

On November 28, 2012, plaintiffs filed suit seeking declaratory relief as well as damages and attorney fees.

3     - OPINION AND ORDER

## DISCUSSION

Defendants move for dismissal of plaintiffs' claims, arguing that they fail to state a RESPA violation and that the remaining claims are premised on the alleged violation of RESPA. In response, plaintiffs agree to dismiss Count II of their First Claim alleging a pattern or practice of noncompliance with REPSA; plaintiffs otherwise oppose defendant's motion.

In Count I of their First Claim, plaintiffs allege that defendant violated RESPA by failing to respond to plaintiffs' QWR for information regarding their loan account within the prescribed time limit of twenty days. See 12 U.S.C.A. § 2605(e)(1)(A) (West 2001). Defendant contends that plaintiffs' RESPA claim fails on four grounds.

First, defendant argues that plaintiffs fail to allege that defendant was given authorization to release loan account information to their attorney, or that plaintiffs specifically designated their attorney as their "agent" with respect to their QWR. Second, defendants asserts that plaintiffs' QWR does not fall within RESPA, because it pertained to plaintiffs' payments under the Plan rather than defendant's servicing of plaintiffs' mortgage loan under their loan agreement. Third, defendant maintains that plaintiffs fail to allege that they sent the QWR to the address designated by defendant for such communications. Finally, defendant contends that plaintiffs' generalized allegations of injury are

insufficient to state a claim for actual, pecuniary damages under RESPA. I reject each of these arguments.

Under RESPA:

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

12 U.S.C.A. § 2605(e)(1)(A) (West 2001).[1] A QWR is defined as:

> [W]ritten correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>
> > (I) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> >
> > (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

Id. § 2605(e)(1)(B).

A copy of plaintiffs' QWR is attached to their First Amended Complaint. First Am. Compl. Ex. JMB-0001. The letter was authored

---

[1] This subsection was amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act to require a response to a QWR within five days of receipt. Pub. L. 111-203, Title XIV, § 1463(c)(1) (July 21, 2010). However, plaintiffs do not allege that the amendment was in effect in March 2012, and it likely was not. See id. § 1400(c); 15 U.S.C.A § 1601, Notes (West Supp. 2012); Berneike v. CitiMortgage, Inc., 708 F.3d 1141, 1145 n.3 (10th Cir. 2013); Hummel v. Hall, 868 F. Supp. 2d 543, 550-51 (W.D. Va. 2012); Williams v. Wells Fargo Bank, N.A., 2011 WL 4368980, at *6 (S.D. Fla. Sept. 19, 2011). Regardless, the effective date of the amendment does not alter the court's analysis.

5    - OPINION AND ORDER

and sent by Joseph Harder, an attorney at Albertazzi Law Firm in Bend, Oregon. The letter is dated March 13, 2012 and identifies plaintiffs, the number of their loan account with defendant, the bankruptcy case number, and the address of plaintiffs' property. The letter further states:

> This firm represents John Wayne Brown and Myrna Lynn Brown (collectively "Borrowers["]), the borrowers on the above referenced Account/loan ("the Account") with Wells Fargo, N.A., and owners of the above referenced property ("Property").
>
> ***
>
> Please note, this is an inquiry pursuant to the Real Estate Settlement Procedures Act ("RESPA") relating to the above referenced Account.
>
> Pursuant to the enclosed Confirmation Order, Motion to Value Collateral, and Case Status, payments on the above referenced Account are current under the plan. *See* Case Status. Despite being current on their payments under the plan, a representative of Wells Fargo Bank, N.A. told the Borrowers that no payments or interest had been paid since 2010. As is evident from the Confirmation Order, Motion to Value Collateral, and Case Summary this information was incorrect. For these reasons, the Borrowers believe their Account is in error.

Id. Ex. JMB-0001-02. Plaintiff demanded that defendant take action "pursuant to RESPA" and provide: a written statement of the account balance, monthly payment and monthly escrow amount; the dates payments were due and not received or the dates that late fees were applied; and information and confirmation regarding payments received from plaintiffs under the Plan. Id. Finally, the letter informs defendant that under RESPA it is "required within 20 days to send written acknowledgment of [its] receipt of this inquiry"

6    - OPINION AND ORDER

and "make appropriate corrections in the Account" regarding late charges and penalties, or to provide a written explanation of why the account is correct or such information is not available. Id. Ex. JMB-0003.

Viewing the facts alleged and construing all reasonable inferences in favor of plaintiffs, I find that their amended complaint, which incorporates their QWR letter, states a plausible claim for relief under RESPA. First, the QWR creates a reasonable inference that plaintiffs' attorney is acting as their agent. The QWR asserts that "[t]his firm represents" plaintiffs with respect to their loan account with defendant, explains that the letter is intended as an inquiry under RESPA regarding that account, informs defendant that their accounting is in error, and requests information and demands certain action on behalf of the "Borrowers." Though the QWR does not specifically state that plaintiffs' attorney is their "agent" for purposes of the request, the language of the letter reasonably creates an inference that plaintiffs' attorney is acting with such authority.

The cases cited by defendant are not to the contrary; no case holds that a borrower must provide "authorization" that a retained attorney seeking loan account information on behalf of a borrower is, in fact, an "agent" of the borrower. Rather, these cases merely note that the servicers either received or had actual knowledge of the agents' authorization. See In re Maxwell, 281 B.R. 101, 122-23

7    - OPINION AND ORDER

(Bankr. D. Mass. 2002) (a request from a foreclosure prevention counselor on behalf of a borrower was a QWR under RESPA because the servicer had received authorization to release information to the counselor); Skaggs v. HSBC Bank USA, N.A., 2010 WL 5390127, at *4 (D. Haw. Dec. 22, 2010) ("[I]t is clear...that at some point during their interactions, BAC acknowledged that Plaintiff's counsel had authorization."). Indeed, the attorney-client relationship speaks for itself and creates an inference of agency. Johnson v. Tesky, 57 Or. App. 133, 137, 643 P.2d 1344 (1982) ("The client-attorney relationship is one of principal and agent.").

Second, plaintiffs' letter relates to the "servicing" of their mortgage loan and constitutes a QWR under RESPA. To be liable under RESPA for failing to respond to a QWR, the request for information must contain a statement of error regarding the loan account or otherwise seek information relating to the receipt of scheduled periodic payments. Vettrus v. Bank of Am., N.A., 2012 WL 2905167, at *8 (D. Or. July 13, 2012). Plaintiffs' QWR specifically references plaintiffs' loan account by name and account number, as well as the communication from defendant's representative stating that no scheduled loan payments had been received since 2010. Plaintiffs' letter asserts that the lack of payment information is incorrect, provides information about the Plan and Plan payments to be credited to their loan, and requests an accounting of payments made to the loan account. In other words, the letter explains the

reasons why defendant's servicing is in error and seeks information relating to the receipt of payments; thus, the letter requests "information *relating* to the servicing of such loan." 12 U.S.C.A. § 2605(e)(1)(A) (West 2001) (emphasis added). The fact that the letter also references the Plan and Plan payments does not render it unrelated to defendant's servicing of the loan account. Therefore, I find that plaintiff's letter constitutes a QWR.

Third, I am not persuaded that dismissal is warranted by plaintiffs' failure to allege that they mailed the QWR to the address specified by defendants for such requests. Plaintiffs allege that they sent their QWR to defendant by certified mail, and that defendant received their QWR. First Am. Compl. at 5. While relevant regulations allow a servicer to designate a "separate address" for receipt of QWRs, 24 C.F.R. 3500.21(d)(3)(ii), I do not find it a necessary element that must be pled in plaintiff's complaint. Moreover, defendant does not argue that it actually specified such an address for QWRs or that plaintiffs failed to send their QWR to that address. Regardless, plaintiffs' allegations are sufficient to create the inference that they sent their QWR to the proper address.

Finally, plaintiffs' First Amended Complaint sets forth their claimed actual damages with specificity. Plaintiffs allege that as "a direct result of Defendant's conduct" they have: "incurred and continue to incur late fees on the Loan Account"; spent "time away

9    - OPINION AND ORDER

from work to research and correct Defendant's errors" and "suffered loss of income" as a result; incurred "expenses related to preparing, photocopying and obtaining certified copies of correspondence with defendant"; and "incurred legal fees and/or costs attempting to correct the errors to the Loan Account... attributable to Defendant's conduct and unrelated to the filing of the original Complaint or this Amended Complaint." First Am. Compl. at 9-10. Plaintiffs also allege that they have suffered emotional distress related to the possible commencement of foreclosure proceedings arising from the alleged lack of payment and the potential effect defendant's errors could have on their bankruptcy discharge and their ability to refinance their debt. Id. These damages are stated sufficiently to survive a motion to dismiss.

Plaintiffs' remaining claims allege breach of contract, negligence and negligent infliction of emotional distress. Defendant initially argued that these claims must fail as they are premised on the alleged RESPA violation. However, for the reasons explained above, plaintiffs' RESPA claim is alleged adequately and I decline to dismiss plaintiffs' remaining claims on this ground. In its reply, defendant argues that the failure to apply Plan payments correctly cannot constitute a breach of the parties' loan agreement, as the Plan governs those payments. Further, defendant argues that plaintiffs cannot recover under tort theories for defendant's alleged violation of RESPA or breach of the agreement.

10   - OPINION AND ORDER

Construing the facts alleged in favor of plaintiffs, I find that they sufficiently allege a breach of contract, in that they allege defendant breached the loan agreement's requirement to apply payments correctly and comply with RESPA. First Am. Compl. at 7. However, I agree that plaintiffs' claims fail to state a claim for negligence or negligent infliction of emotional distress, in that they fail to allege a special relationship or a duty owed by defendant beyond the common-law duty to exercise reasonable care. Johnson v. Wells Fargo Home Mortgage, Inc., 635 F.3d 401, 420-21 (9th Cir. 2011) (RESPA does not create special duty); Lowe v. Philip Morris USA, Inc., 344 Or. 403, 413-14, 183 P.3d 181 (2008).

## CONCLUSION

Defendant's Motion to Dismiss (doc. 10) is GRANTED in part. Plaintiffs' claims for negligence and negligent infliction of emotional distress are DISMISSED, and plaintiffs' claim alleging a pattern or practice of noncompliance with RESPA is DISMISSED without prejudice. Defendant's motion is otherwise DENIED. Defendant's Request for Judicial Notice (doc. 13) is GRANTED.

IT IS SO ORDERED.

Dated this 4th day of May, 2013.

_____
Ann Aiken
United States District Judge

11    - OPINION AND ORDER